Case 1:23-cv-05038-JMA-SIL    Document 1-1    Filed 07/03/23    Page 1 of 21 PageID #: 6

NEW YORK STATE SUPREME COURT
KINGS COUNTY

BRIAN O'DEA,

                              Plaintiff,

-against-

DIOCESE OF BROOKLYN, CAMP ALVERNIA, and
FRANCISCAN BROTHERS OF BROOKLYN,

                              Defendants.

Index No.: _____/__

Date Filed:

**SUMMONS**

Plaintiff designates Kings
County as the place of trial.

The basis of venue is one
defendant's residence.

**Child Victims Act Proceeding
22 NYCRR 202.72**

TO THE ABOVE-NAMED DEFENDANTS:

        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive
of the day of service (or within 30 days after the service is complete if this summons is not
personally delivered to you within the State of New York); and in case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: June 5, 2020

                    Respectfully Yours,

                    MARSH LAW FIRM PLLC

                    By _____
                    James R. Marsh
                    Jennifer Freeman
                    Robert Lewis
                    jamesmarsh@marsh.law
                    jenniferfreeman@marsh.law
                    robertlewis@marsh.law
                    31 Hudson Yards, 11th Floor
                    New York, NY 10001-2170
                    Phone: 212-372-3030

Case 1:23-cv-05038-JMA-SIL   Document 1-1   Filed 07/03/23   Page 2 of 21 PageID #: 7

**PFAU COCHRAN VERTETIS AMALA PLLC**

By _____

Vincent T. Nappo
Anelga Doumanian
vnappo@pcvalaw.com
adoumanian@pcvalaw.com
31 Hudson Yards, 11th Floor
New York, NY 10001-2170

**Attorneys for Plaintiff**

2

Case 1:23-cv-05038-JMA-SIL    Document 1-1    Filed 07/03/23    Page 3 of 21 PageID #: 8

NEW YORK STATE SUPREME COURT
KINGS COUNTY

BRIAN O'DEA,

                            Plaintiff,

-against-

DIOCESE OF BROOKLYN, CAMP ALVERNIA, and
FRANCISCAN BROTHERS OF BROOKLYN,

                            Defendants.

Index No.:

**COMPLAINT**

**Child Victims Act Proceeding
22 NYCRR 202.72**

Plaintiff Brian O'Dea, by and through his attorneys, the Marsh Law Firm PLLC and Pfau Cochran Vertetis Amala PLLC, respectfully alleges for his complaint the following:

## I.    INTRODUCTION

1.    The Diocese of Brooklyn (the "Diocese") knew for decades that its priests, clergy, religious brothers, religious sisters, school administrators, teachers, employees, and volunteers were using their positions within the Diocese to groom and to sexually abuse children. Despite that knowledge, the Diocese failed to take reasonable steps to protect children from being sexually abused and actively concealed the abuse. In February of 2019, following decades of denial and cover-up, the Diocese of Brooklyn released a list of over 100 priests accused of sexually abusing children. Based on the Diocese's wrongful conduct, a reasonable person could and would conclude that it knowingly and recklessly disregarded the abuse of children and chose to protect its reputation and wealth over those who deserved protection. The result is not surprising: for decades hundreds, if not thousands, of children were sexually abused by Catholic clergy and others who served the Diocese. The plaintiff in this lawsuit is one of the children who were sexually abused because of the Diocese's wrongful conduct.

## II.     PROCEEDING IN ACCORDANCE WITH CPLR 214-G AND 22 NYCRR 202.72

2.       This complaint is filed pursuant to the Child Victims Act (CVA) 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440), CPLR 214-G, and 22 NVCRR 202.72. The CVA opened a historic one-year one-time window for victims and survivors of childhood sexual abuse in the State of New York to pursue lapsed claims. Prior to the passage of the CVA, plaintiff's claims were time-barred the day plaintiff turned 22 years old. The enactment of the CVA allows plaintiff, for the first time in plaintiff's life, to pursue restorative justice in New York State.

### III.     PARTIES

3.       Plaintiff Brian O'Dea is an adult male who currently resides in Mountain View, California.

4.       While he was a minor, plaintiff Brian O'Dea was a victim of one or more criminal sex acts in the State of New York, including sexual acts that would constitute a sexual offense as defined by the Child Victims Act.

5.       The Diocese is currently a not-for-profit religious corporation organized under New York law with its principal office in Brooklyn, New York.

6.       At all relevant times the Diocese conducted business as the Diocese of Brooklyn.

7.       At all relevant times the Diocese employed and/or relied on priests, clergy, religious brothers, religious sisters, teachers, school administrators, employees, volunteers, and others who served various Catholic institutions and families, including plaintiff Brian O'Dea and his family.

8.       Plaintiff Brian O'Dea was abused by a religious brother of the Diocese and the Franciscan Brothers of Brooklyn ("the Franciscan Brother" or "the Franciscan Brother who abused Brian"). The Franciscan Brother who abused Brian was a religious brother and employee of the Diocese who served Catholic families on behalf of the Diocese, including plaintiff Brian O'Dea and his family.

2

9.     During the time the Franciscan Brother who abused Brian served the Diocese, he used his positions as a religious brother and employee of the Diocese to groom and to sexually abuse plaintiff Brian O'Dea.

10.     To the extent that the Diocese was a different entity, corporation, or organization during the period of time during which the Franciscan Brother who abused Brian used his positions as a religious brother and employee to sexually abuse plaintiff Brian O'Dea, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as the Diocese of Brooklyn.

11.     To the extent the Diocese is a successor to a different entity, corporation, or organization which existed during the period of time during which the Franciscan Brother who abused Brian used his positions as a religious brother and employee to sexually abuse plaintiff Brian O'Dea, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as the Diocese of Brooklyn.

12.     All such Diocese-related entities, corporations, or organizations are collectively referred to herein as the "Diocese."

13.     At all relevant times defendant Camp Alvernia ("Camp Alvernia") was a not-for-profit religious corporation organized under New York law that was wholly owned, operated, and controlled by the Diocese.

14.     Camp Alvernia is currently a not-for-profit religious corporation organized under New York law with its principal office in Centerport, New York.

15.     At all relevant times Camp Alvernia conducted business as "Camp Alvernia," "Alvernia," "Alvernia Summer Camp," and "Mount Alvernia Inc."

16.     Camp Alvernia is a camp located in Centerport, New York.

3

17.     The Franciscan Brother who abused Brian was a religious brother and employee of Camp Alvernia who served Catholic families on behalf of Camp Alvernia, including plaintiff Brian O'Dea and his family.

18.     During the time the Franciscan Brother who abused Brian served at Camp Alvernia, he used his positions as a religious brother and employee of Camp Alvernia to groom and to sexually abuse plaintiff Brian O'Dea.

19.     To the extent that Camp Alvernia was a different entity, corporation, or organization during the period of time during which the Franciscan Brother who abused Brian used his positions as a religious brother and employee to sexually abuse Brian, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Camp Alvernia.

20.     To the extent Camp Alvernia is a successor to a different entity, corporation, or organization which existed during the period of time during which the Franciscan Brother who abused Brian used his positions as a religious brother and employee to sexually abuse Brian, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Camp Alvernia.

21.     All such Camp Alvernia-related entities, corporations, or organizations are collectively referred to herein as "Camp Alvernia."

22.     At all relevant times defendant Franciscan Brothers of Brooklyn ("Franciscan Brothers") was a not-for-profit religious corporation organized under New York law with its principal office in Brooklyn, New York.

23.     At all relevant times the Franciscan Brothers conducted business as "Franciscan Brothers of Brooklyn," "Congregation of the Religious Brothers of the Third Order Regular of St.

4

Francis," "Religious Brothers of the Third Order Regular of St. Francis," and the "Franciscan Brothers."

24.    The Franciscan Brothers is a Catholic religious order whose members, employees, and/or agents served various Catholic institutions and families, including the Diocese, Camp Alvernia, plaintiff Brian O'Dea, and his family.

25.    The members, employees, and/or agents of the Franciscan Brothers were generally referred to as brothers and the Franciscan Brothers would receive compensation for the services that its agents provided to others, including the services they provided to the Diocese and Camp Alvernia.

26.    The Franciscan Brother who abused Brian was an agent of the Franciscan Brothers who served Catholic families on behalf of the Franciscan Brothers, including plaintiff Brian O'Dea and his family.

27.    During the time the Franciscan Brother who abused Brian served the Franciscan Brothers, he used his position as an agent of the Franciscan Brothers to groom and to sexually abuse plaintiff Brian O'Dea.

28.    To the extent that the Franciscan Brothers was a different entity, corporation, or organization during the period of time during which the Franciscan Brother who abused Brian used his positions at Camp Alvernia to sexually abuse Brian, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Franciscan Brothers of Brooklyn.

29.    To the extent the Franciscan Brothers is a successor to a different entity, corporation, or organization that existed during the period of time when the Franciscan Brother who abused Brian used his positions at Camp Alvernia to sexually abuse Brian, such predecessor

5

entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Franciscan Brothers of Brooklyn.

30.    All such Franciscan Brothers-related entities, corporations, or organizations are collectively referred to herein as the "Franciscan Brothers."

## IV.    VENUE

31.    Venue is proper because the Diocese is a domestic corporation authorized to transact business in New York with its principal office located in Kings County.

32.    Venue is proper because Camp Alvernia is a domestic corporation authorized to transact business in New York with its principal office located in Centerport, New York.

33.    Venue is proper because Kings is the county in which a substantial part of the events or omissions giving rise to plaintiff's claims occurred.

34.    The amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## V.    STATEMENT OF FACTS

35.    At all relevant times the Diocese employed and/or relied on priests, clergy, religious brothers, religious sisters, teachers, school administrators, employees, volunteers, and others who served various Catholic institutions and families, including plaintiff Brian O'Dea and his family.

36.    At all relevant times the Diocese was the owner of Camp Alvernia and held itself out to the public as the owner of Camp Alvernia.

37.    At all relevant times the Diocese, through its agents, servants, and employees, managed, maintained, operated, and controlled Camp Alvernia, including the agents of the Franciscan Brothers who served there.

38.    At all relevant times the Diocese, through its agents, servants, and employees, managed, maintained, operated, and controlled Camp Alvernia, and held out to the public its

6

Case 1:23-cv-05038-JMA-SIL   Document 1-1   Filed 07/03/23   Page 9 of 21 PageID #: 14
INDEX NO. 513586/2020
RECEIVED NYSCEF: 07/28/2020

agents, servants, and employees as those who managed, maintained, operated, and controlled Camp Alvernia.

39.     At all relevant times the Diocese was responsible for the hiring and staffing, and did the hiring and staffing, at Camp Alvernia.

40.     At all relevant times the Diocese was responsible for and did the recruitment and staffing of volunteers at Camp Alvernia.

41.     At all relevant times the Diocese materially benefited from the operation of Camp Alvernia, including the services of the Franciscan Brother who abused Brian and the services of those who managed and supervised the Franciscan Brother who abused Brian.

42.     At all relevant times Camp Alvernia owned a camp.

43.     At all relevant times Camp Alvernia held itself out to the public as the owner of Camp Alvernia.

44.     At all relevant times Camp Alvernia employed and/or utilized individuals who served Catholic families, including plaintiff Brian O'Dea and his family.

45.     At all relevant times Camp Alvernia, through its agents, servants, and employees, managed, maintained, operated, and controlled Camp Alvernia, and held out to the public its agents, servants and employees as those who managed, maintained, operated, and controlled Camp Alvernia.

46.     At all relevant times Camp Alvernia was responsible for and did the staffing and hiring at Camp Alvernia.

47.     At all relevant times Camp Alvernia was responsible for and did the recruitment and staffing of the employees, agents, and volunteers at Camp Alvernia.

7

INDEX NO. 513586/2020
RECEIVED NYSCEF: 07/28/2020

Case 1:23-cv-05038-JMA-SIL    Document 1-1    Filed 07/03/23    Page 10 of 21 PageID #: 15

48.     At all relevant times Camp Alvernia materially benefited from the operation of Camp Alvernia, including the services of the Franciscan Brother who abused Brian and the services of those who managed and supervised the Franciscan Brother who abused Brian.

49.     At all relevant times the Franciscan Brother who abused Brian was an employee, agent, and/or religious brother and employee of the Diocese.

50.     At all relevant times the Franciscan Brother who abused Brian was on the staff of, acted as an agent of, and/or served as an employee of the Diocese.

51.     At all relevant times the Franciscan Brother who abused Brian was acting in the course and scope of his employment and/or agency with the Diocese.

52.     At all relevant times the Franciscan Brother who abused Brian was an employee and/or agent of the Diocese that it assigned to Camp Alvernia and that it allowed to serve at Camp Alvernia.

53.     At all relevant times the Franciscan Brother who abused Brian was an employee, agent, and/or religious brother and employee of Camp Alvernia.

54.     At all relevant times the Franciscan Brother who abused Brian was on the staff of, was an agent of, and/or served as an employee of Camp Alvernia.

55.     At all relevant times the Franciscan Brother who abused Brian was acting in the course and scope of his employment and/or agency with Camp Alvernia.

56.     At all relevant times the Franciscan Brothers provided the Diocese and Camp Alvernia with some of its agents to provide services at Camp Alvernia.

57.     At all relevant times the Franciscan Brothers held itself out to the public as the owner and/or operator of Camp Alvernia.

Case 1:23-cv-05038-JMA-SIL     Document 1-1     Filed 07/03/23     Page 11 of 21 PageID
#: 16

58.     At all relevant times agents of the Franciscan Brothers provided services to Catholic families, including plaintiff Brian O'Dea and his family.

59.     At all relevant times the Franciscan Brothers, through its agents, managed, maintained, operated, and controlled Camp Alvernia, and held out to the public its agents as those who managed, maintained, operated, and controlled Camp Alvernia.

60.     At all relevant times the Franciscan Brothers was responsible for and did the staffing and hiring at Camp Alvernia.

61.     At all relevant times the Franciscan Brothers was responsible for and did the recruitment and staffing of volunteers at Camp Alvernia.

62.     At all relevant times the Franciscan Brothers materially benefited from the operation of Camp Alvernia, including the services of the Franciscan Brother who abused Brian and the services of those who managed and supervised the Franciscan Brother who abused Brian.

63.     At all relevant times the Franciscan Brother who abused Brian was an agent of the Franciscan Brothers at Camp Alvernia.

64.     At all relevant times the Franciscan Brother who abused Brian acted as an agent of the Franciscan Brothers.

65.     At all relevant times the Franciscan Brother who abused Brian was acting in the course and scope of his agency with the Franciscan Brothers.

66.     At all relevant times the Franciscan Brother who abused Brian was an agent of the Franciscan Brothers that it assigned to Camp Alvernia and/or that it allowed to serve at Camp Alvernia.

67.     The agents of the Franciscan Brothers who provided services to the Diocese and Camp Alvernia, including the Franciscan Brother who abused Brian and those who managed and

Case 1:23-cv-05038-JMA-SIL    Document 1-1    Filed 07/03/23    Page 12 of 21 PageID #: 17

supervised him, were subject to the authority and control of the Franciscan Brothers, the Diocese, and Camp Alvernia.

68.    The Diocese and Camp Alvernia derived benefits from the agents of the Franciscan Brothers who provided services to the Diocese and Camp Alvernia, including the Franciscan Brother who abused Brian and those who managed and supervised him.

69.    At all relevant times the Franciscan Brother who abused Brian had an office on the premises of Camp Alvernia.

70.    When plaintiff Brian O'Dea was a minor, he and his parents were members of the Diocese, including when Brian attended camp at Camp Alvernia.

71.    The Diocese, Camp Alvernia, and the Franciscan Brothers, through their agents, servants, and employees, held the Franciscan Brother who abused Brian out to the public, to Brian, and to his parents, as their agent and/or employee.

72.    The Diocese, Camp Alvernia, the Franciscan Brothers, through their agents, servants, and employees, held the Franciscan Brother who abused Brian out to the public, to Brian, and to his parents, as having been vetted, screened, and approved by those defendants.

73.    Brian and his parents reasonably relied upon the acts and representations of the Diocese, Camp Alvernia, and the Franciscan Brothers, through their agents, servants, and employees, and reasonably believed that the Franciscan Brother who abused Brian was an agent and/or employee of those defendants who was vetted, screened, and approved by those defendants.

74.    Brian and his parents trusted the Franciscan Brother who abused Brian because the Diocese, Camp Alvernia, and the Franciscan Brothers held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of Brian.

10

75.     Brian and his parents believed that the Diocese, Camp Alvernia, and the Franciscan Brothers would exercise such care as would a parent of ordinary prudence in comparable circumstances when those defendants assumed supervision, care, custody, and control of Brian.

76.     When Brian was a minor, the Franciscan Brother who abused Brian used his positions with the defendants to sexually abuse him.

77.     Brian was sexually abused by the Franciscan Brother who abused Brian when he was approximately 11 years old.

78.     The sexual abuse occurred numerous times and included, but was not limited to, the Franciscan Brother who abused Brian watching Brian shower, the Franciscan Brother who abused Brian masturbating Brian, the Franciscan Brother who abused Brian asking Brian to masturbate him, the Franciscan Brother who abused Brian performing oral sex on Brian, and the Franciscan Brother who abused Brian anally penetrating Brian with his fingers.

79.     Based on the representations of the Diocese, Camp Alvernia, and the Franciscan Brothers that the Franciscan Brother who abused Brian was safe and trustworthy, Brian and his parents allowed Brian to be under the supervision of, and in the care, custody, and control of, the Diocese, Camp Alvernia, and the Franciscan Brothers, including during the times when Brian was sexually abused by the Franciscan Brother who abused Brian.

80.     Based on the representations of the Diocese, Camp Alvernia, and the Franciscan Brothers that the Franciscan Brother who abused Brian was safe and trustworthy, Brian and his parents allowed Brian to be under the supervision of, and in the care, custody, and control of, the Franciscan Brother who abused Brian, including during the times when Brian was sexually abused by the Franciscan Brother who abused Brian.

11

FILED: KINGS COUNTY CLERK 07/28/2020 04:01 PM
NYSCEF DOC. NO. 1
INDEX NO. 513586/2020
RECEIVED NYSCEF: 07/28/2020

81.     Neither Brian nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of, the Diocese, Camp Alvernia, the Franciscan Brothers, or the Franciscan Brother who abused Brian if the Diocese, Camp Alvernia, or the Franciscan Brothers had disclosed to Brian or his parents that the Franciscan Brother who abused Brian was not safe and was not trustworthy, and that he in fact posed a danger to Brian in that the Franciscan Brother who abused Brian was likely to sexually abuse Brian.

82.     No parent of ordinary prudence in comparable circumstances would have allowed Brian to be under the supervision of, or in the care, custody, or control of, the Diocese, Camp Alvernia, the Franciscan Brothers, or the Franciscan Brother who abused Brian if the Diocese, Camp Alvernia, or the Franciscan Brothers had disclosed to Brian or his parents that the Franciscan Brother who abused Brian was not safe and was not trustworthy, and that he in fact posed a danger to Brian in that the Franciscan Brother who abused Brian was likely to sexually abuse him.

83.     In approximately 1969, the Franciscan Brother who abused Brian exploited the trust and authority vested in him by the defendants by grooming Brian to gain his trust and to obtain control over him as part of the Franciscan Brother's plan to sexually molest and abuse Brian and other children.

84.     The Franciscan Brother who abused Brian used his position of trust and authority as an employee and/or agent of the Diocese, of Camp Alvernia, and of the Franciscan Brothers to groom Brian and to sexually abuse him multiple times, including when Brian was under the supervision of, and in the care, custody, or control of, the Diocese, Camp Alvernia, the Franciscan Brothers, and the Franciscan Brother who abused Brian.

85.     The sexual abuse of Brian by the Franciscan Brother who abused Brian occurred at Camp Alvernia, including in the cabin of Camp Alvernia in which Brian was staying.

12

Case 1:23-cv-05038-JMA-SIL    Document 1-1    Filed 07/03/23    Page 15 of 21 PageID #: 20

86.     The sexual abuse of Brian by the Franciscan Brother who abused Brian occurred during activities that were sponsored by, or were a direct result of activities sponsored by, the Diocese, Camp Alvernia, and the Franciscan Brothers, including while campers were showering. During such activities the defendants had care, custody, or control of Brian.

87.     Prior to the times mentioned herein, the Franciscan Brother who abused Brian was a known sexual abuser of children.

88.     At all relevant times the defendants, through their agents, servants, and employees, knew or should have known that the Franciscan Brother who abused Brian was a known sexual abuser of children.

89.     At all relevant times it was reasonably foreseeable to the defendants, through their agents, servants, and employees, that the Franciscan Brother's sexual abuse of children would likely result in injury to others, including the sexual abuse of Brian and other children by the Franciscan Brother who abused Brian.

90.     The defendants, their agents, servants, and employees knew or should have known that the Franciscan Brother who abused Brian was sexually abusing Brian and other children at Camp Alvernia and elsewhere.

91.     The defendants, through their agents, servants, and employees, knew or should have known that the sexual abuse by the Franciscan Brother who abused Brian of Brian was ongoing.

92.     The defendants, through their agents, servants, and employees, knew or should have known before and during the sexual abuse of Brian by the Franciscan Brother who abused Brian that priests, clergy, religious brothers, religious sisters, teachers, school administrators, employees, volunteers, and/or other persons serving the Diocese, Camp Alvernia, and/or the Franciscan Brothers had used their positions with those defendants to groom and to sexually abuse children.

13

Case 1:23-cv-05038-JMA-SIL Document 1-1 Filed 07/03/23 Page 16 of 21 PageID #: 21

93.     The defendants, through their agents, servants, and employees, knew or should have known before and during the sexual abuse of Brian by the Franciscan Brother who abused Brian that such priests, clergy, religious brothers, religious sisters, teachers, school administrators, employees, volunteers, and/or other persons could not be "cured" through treatment or counseling.

94.     The defendants, through their agents, servants, and employees, concealed the sexual abuse of children by the Franciscan Brother who abused Brian in order to conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent victims of such sexual abuse by him from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that the Franciscan Brother who abused Brian would continue to molest children.

95.     The defendants, through their agents, servants, and employees, consciously and recklessly disregarded their knowledge that the Franciscan Brother who abused Brian would use his position with the defendants to sexually abuse children, including Brian.

96.     The defendants, through their agents, servants, and employees, disregarded their knowledge that the Franciscan Brother who abused Brian would use his positions with them to sexually abuse children, including Brian.

97.     The defendants, through their agents, servants, and employees, acted in concert with each other or with the Franciscan Brother who abused Brian to conceal the danger that the Franciscan Brother who abused Brian posed to children, including Brian, so that the Franciscan Brother who abused Brian could continue serving them despite their knowledge of that danger.

98.     The defendants, through their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including Brian, and he did in fact suffer

Case 1:23-cv-05038-JMA-SIL   Document 1-1   Filed 07/03/23   Page 17 of 21 PageID #: 22

severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

99.     The defendants, through their agents, servants, and employees, concealed the sexual abuse of children by priests and others in order to conceal their own bad acts in failing to protect children from being abused, to protect their reputation, and to prevent victims of such sexual abuse from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that those priests and other persons would continue to molest children.

100.     By reason of the wrongful acts of each of the defendants as detailed herein, Brian sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and Brian has and/or will become obligated to expend sums of money for treatment.

## VI.     CAUSES OF ACTION

### A.     FIRST CAUSE OF ACTION – NEGLIGENCE

101.     Plaintiff Brian O'Dea repeats and re-alleges all of his allegations above and below.

102.     Each defendant had a duty to take reasonable steps to protect plaintiff Brian O'Dea, a child, from foreseeable harm when he was under their supervision and in their care, custody, and control, including when the Franciscan Brother who abused Brian sexually abused him.

103.     Each defendant also had a duty to take reasonable steps to prevent the Franciscan Brother who abused Brian from using the tasks, premises, and instrumentalities of his positions with them to target, groom, and sexually abuse children, including Brian.

15

104.   These circumstances created a special relationship between each defendant and Brian that imposed on each of them a duty to exercise the degree of care of a parent of ordinary prudence in comparable circumstances.

105.   Each defendant breached the foregoing duties by failing to exercise reasonable care to prevent the Franciscan Brother who abused Brian from using his positions with the defendants to sexually abuse Brian when he was in their care, custody, or control.

106.   In breaching their duties, including hiring, retaining, and failing to supervise the Franciscan Brother who abused Brian, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn Brian, his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for Brian and other children who were under their supervision and in their care, custody, and control, each defendant created a risk that Brian would be sexually abused by the Franciscan Brother who abused Brian.  Each defendant through its actions and inactions created an environment that placed Brian in danger of unreasonable risks of harm under the circumstances.

107.   In breaching their duties, including hiring, retaining, and failing to supervise the Franciscan Brother who abused Brian, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn Brian, his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for Brian and other children who were under their supervision and in their care, custody, and control, each defendant acted willfully and with conscious disregard for the need to

16

protect Brian. Each defendant through their actions and inactions created an environment that placed Brian in danger of unreasonable risks of harm under the circumstances.

108.    It was reasonably foreseeable that each defendant's breach of these duties of care would result in the sexual abuse of Brian.

109.    As a direct and proximate result of the acts and omissions of each defendant, the Franciscan Brother who abused Brian groomed and sexually abused Brian, which has caused Brian to suffer general and special damages as more fully described herein.

**B.    SECOND CAUSE OF ACTION – OUTRAGE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

110.    Plaintiff Brian O'Dea repeats and re-alleges all of his allegations above and below.

111.    Each defendant engaged in reckless, extreme, and outrageous conduct by providing the Franciscan Brother who abused Brian with access to children, including plaintiff Brian O'Dea, despite knowing that he would likely use his positions to groom and to sexually abuse them, including Brian. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

112.    As a result of this reckless, extreme, and outrageous conduct, the Franciscan Brother who abused Brian gained access to Brian and sexually abused him.

113.    Each defendant knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and Brian did in fact suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

Case 1:23-cv-05038-JMA-SIL    Document 1-1    Filed 07/03/23    Page 20 of 21 PageID #: 25

## VII.    CPLR 1603 – NO APPORTIONMENT OF LIABILITY

114.    Pursuant to CPLR 1603, the foregoing causes of action are exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(2), CPLR 1602(5), 1602(7) and 1602(11), thus precluding defendants from limiting their liability by apportioning some portion of liability to any joint tortfeasor.

## VIII.    PRAYER FOR RELIEF

115.    Plaintiff Brian O'Dea demands judgment against the defendants named in his causes of action, together with compensatory and punitive damages to be determined at trial, and the interest, cost and disbursements pursuant to his causes of action, and such other and further relief as the Court deems just and proper.

116.    Plaintiff specifically reserves the right to pursue additional causes of action, other than those outlined above, that are supported by the facts pleaded or that may be supported by other facts learned in discovery.

Dated: June 5, 2020

MARSH LAW FIRM PLLC

By _____

James R. Marsh
Jennifer Freeman
Robert Lewis
jamesmarsh@marsh.law
jenniferfreeman@marsh.law
robertlewis@marsh.law
31 Hudson Yards, 11th Floor
New York, NY 10001-2170
Phone: 212-372-3030

18

Case 1:23-cv-05038-JMA-SIL    Document 1-1    Filed 07/03/23    Page 21 of 21 PageID #: 26

PFAU COCHRAN VERTETIS AMALA PLLC

By _____
Vincent T. Nappo
vnappo@pcvalaw.com
Anelga Doumanian
adoumanian@pcvalaw.com
31 Hudson Yards, 11th Floor
New York, NY 10001-2170

Attorneys for Plaintiff

19